MARK, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 19—June 21, 1938.*

The cause was submitted for the plaintiff in error on the brief of *Ralph Mark, in pro per.*, and for the defendant in error on that of the *Attorney General, J. E. Messerschmidt*, assistant attorney general, *John P. McEvoy*, district attorney of Kenosha county, and *K. T. Savage*, assistant district attorney.

NELSON, J. On July 3, 1936, one Robert Knight made complaint to the county judge of Kenosha county. The complaint, made upon information and belief, in substance charged that the defendant, on May 15, 1936, designedly obtained from one Nellie Knight, two diamond rings of the approximate value of $500, by false pretenses and with intent to defraud, contrary to the provisions of sec. 343.25 of the statutes. A warrant was duly issued. The defendant was arrested and brought before the county judge on October 22, 1936, and duly arraigned. After being fully advised as to his legal rights, he entered a plea of not guilty. The preliminary examination was set for October 29th, and held on that day. The district attorney and the assistant district attorney of Kenosha county appeared for the state, and the defendant acted in his own behalf. Nellie Knight, from whom it was charged the defendant had obtained the rings by false pretenses, was duly sworn and testified. Several other witnesses testified. All of the witnesses were cross-examined by the defendant, who apparently had considerable knowledge of criminal procedure although not a lawyer. The defendant neither testified nor adduced any testi-

mony at the examination. At the conclusion of the examination, the county judge found that the offense alleged in the complaint and warrant had been committed, that there was probable cause to believe the defendant guilty of such offense, and thereupon bound the defendant over to the municipal court of Kenosha county for trial. The defendant was unable to furnish bail, and was therefore remanded to the custody of the sheriff of Kenosha county. On November 7, 1936, the defendant presented an affidavit to the municipal court in which he stated that he was destitute of means to employ counsel, and asked the court to appoint counsel to defend him at the expense of the county. The municipal judge promptly appointed C. A. Tennessen, a member of the Kenosha county bar. On December 8, 1936, the district attorney of Kenosha county filed in the municipal court of Kenosha county an information which charged, in substance, that on the 15th day of May, A. D. 1936, at the city and county of Kenosha, the defendant being then and there the bailee of two diamond rings of the approximate value of $500, the property of one Nellie Knight, did then and there, unlawfully and feloniously take, conceal, and carry them away, and fraudulently convert them to his use, contrary to the provisions of sec. 343.17 of the statutes. The information further charged former convictions of the defendant in the states of New York, Pennsylvania, and Ohio. To this information the defendant entered a plea of not guilty. The defendant's attorney objected to the filing of the information, apparently upon the ground that the offense charged therein was not the same offense as was charged in the complaint. The objection was overruled. The trial then proceeded to the court and a jury. No claim of surprise was asserted and no request for a continuance, based upon the assertion that the defendant was not prepared for trial, was made.

The facts adduced by the state tended to show that one Nellie Knight was, in the month of May, 1936, a resident of Kenosha, and employed at the J. C. Penney store; that she was the owner of two diamond rings of the approximate value of $450; that prior to that time she had joined a correspondence or matrimonial club, known as Standard Correspondence Club; that the defendant was also a member of that club, and had theretofore had inserted in the club's publication an advertisement which described him as an attorney at law, forty years of age, height five feet ten inches, weight, one hundred eighty pounds, brown hair and eyes, a man of means, handsome, and of excellent character. The name appended to the advertisement was Ralph Mark, whose address was a certain one in Chicago. Nellie Knight wrote a letter in response to the advertisement. In due time she received a letter signed "R. Mark," in which it was stated, among other things :

"I will see you in a few days, I think it best for use to see each other in person then just to corspond. will try to be down some time duering the comeing week."

Mrs. Knight testified that she first met the defendant on May 5th, when he called at the store and introduced himself as Ralph Mark and as the one who had corresponded with her. Nothing of importance occurred at that meeting except his promise to return some time during the week to discuss matrimony. According to the testimony of Mrs. Knight, as she left the Penney store on May 7th, the defendant was waiting for her. He accompanied her to her rooming house, and then invited her out to dine with him at an Italian restaurant. Two and a half hours were spent there. At that time Mrs. Knight was wearing her two diamond rings. The defendant proposed that she let him take one of the rings as a sort of assurance that she would marry him or to show that she had faith in him. She, however, ignored his remark. On

the following Sunday she received a telephone call from him. On May 15th, according to her testimony, the defendant again met her at Kenosha, and again took her out to dine with him at a restaurant. Matrimony was further discussed, and Mrs. Knight consented to marry him. The defendant told her that he did not want her to wear rings that she had received from someone else, and that he would give her a much larger stone, and would have her rings reset so that she might give one of them to her son and one to her sister. Some time thereafter she accompanied him to the North Shore station where shortly before his departure he asked for one of her rings and put it on his finger. Mrs. Knight also gave him the other ring with the understanding that both were to be reset and returned to her. He put them in his pocket, and shortly thereafter got on the train and departed. He had promised to return the following week for the marriage ceremony, but she never saw him again until after his arrest. After the defendant's departure he did not return the rings, he did not write to Mrs. Knight, he did not telephone her, or telegraph her, or communicate with her in any way. He never returned the rings or offered to do so. When arrested he denied that he had ever had the rings. It was further shown by the testimony of an experienced jeweler that the rings were reasonably worth about $450. It was further shown by the testimony of a Mrs. Wiklund, who resided in an apartment adjoining that of Mrs. Knight, that the defendant, early in May inquired of her as to the whereabouts of Mrs. Knight, and was told that she could be found at the store where she was employed. The defendant was also seen at that time by two of Mrs. Wiklund's daughters, who also identified him as the man who had inquired for Mrs. Knight. Robert Knight, a son of Mrs. Knight, testified that the defendant was the identical person who took his mother to the Italian restaurant for dinner on the evening of

May 7th. At that time the witness had an extended conversation with the defendant in the restaurant. John F. Tyrrell, the well-known expert on questioned documents, was produced and testified that a certain letter written to the Standard Correspondence Club requesting an application blank and an application blank which contained many written answers to the printed questions, both of which were signed by Ralph Mark, were written by the identical person who wrote a letter from the Kenosha county jail to Judge STEWART, which letter unquestionably was proven to have been written by the defendant. There was other testimony by police officers which had some bearing on the question of defendant's guilt, but which need not presently be recited.

The defendant is still confined in the Wisconsin state prison. No lawyer has appeared for him in this court. He himself presented the petition for a writ of error and his brief which has been printed at the expense of the state. Since receiving copies of the state's brief he has filed two additional reply briefs which, although not printed, have been considered by the court. The defendant has some knowledge of legal phraseology and criminal procedure. He is apparently familiar with the constitution of the United States and the constitution of this state and of the rights which they guarantee. His brief is, to say the least, inartistic, and reveals that his knowledge of the law is but smattering. It is our duty, notwithstanding, to give to his contentions, as we understand them, careful and conscientious consideration.

The principal contention of the defendant is that the district attorney had no right to file an information charging him with the crime of larceny as bailee since the complaint made to the county judge, as the examining magistrate, charged the crime of obtaining property by false pretenses, and that therefore no preliminary examination was held on the specific charge alleged in the information. There are two controlling reasons why the defendant's contention must be

held to be unsound.   The first reason is that sec. 355.17, Stats., in so far as here material, provides:

"The district attorney of the proper county shall inquire into and make full examination of all facts and circumstances connected with any case of preliminary examination as provided by law, touching the commission of any offense whereon the offender shall have been committed to jail, become recognized or held to bail, and file an information setting forth the crime committed, according to the facts ascertained on such examination and from the written testimony taken thereon, whether it be the offense charged in the complaint on which the examination was had or not."

That statute has been considered many times by this court, and it has always been held that it means what it says.   It clearly authorizes the district attorney to file an information setting forth the crime committed according to the facts ascertained on such examination and from the written testimony taken thereon, whether it be the offense charged in the complaint on which the examination was had or not.   In *Porath v. State,* 90 Wis. 527, 63 N. W. 1061, that statute, then sec. 4653, S. & B. Ann. Stats., was discussed.   In that case a plea in abatement was interposed on the ground that the defendant had not had a preliminary examination on a certain count of the information.   The plea in abatement was overruled and full force and effect given to the statute. See also *Dahlgren v. State,* 163 Wis. 141, 157 N. W. 531; *Bianchi v. State,* 169 Wis. 75, 171 N. W. 639; *O'Keefe v. State,* 177 Wis. 64, 187 N. W. 656; *Faull v. State,* 178 Wis. 66, 189 N. W. 274; *Jones v. State,* 184 Wis. 50, 198 N. W. 598; *Scott v. State,* 211 Wis. 548, 248 N. W. 473; *State ex rel. Kropf v. Gilbert,* 213 Wis. 196, 251 N. W. 478; *Hobbins v. State,* 214 Wis. 496, 253 N. W. 570.

From all of these cases it clearly appears that sec. 355.17, Stats., permits the district attorney to file an information containing such charge as the facts adduced at the preliminary examination warrant.   Such an information must, of

course, be based upon the facts brought out on the preliminary examination. It would be improper for a district attorney, against the objection of a defendant, to file an information charging a crime wholly unrelated to the transactions or facts considered or testified to at the preliminary examination. See *Faull v. State, supra.* In the present case, however, the facts adduced at the preliminary examination upon the complaint which charged obtaining property by false pretenses were substantially the same as those adduced at the trial. The district attorney in this case might properly have filed an information containing a count which also charged that the defendant obtained property by false pretenses. Under the evidence a conviction for either offense would have to be sustained.

The second reason is that the defendant failed and omitted, before pleading to the merits, to file a plea in abatement. Sec. 355.18, Stats., provides:

"No information shall be filed against any person for any offense until such person shall have had a preliminary examination, as provided by law, before a justice of the peace or other examining magistrate or officer, unless such person shall waive his right to such examination; provided, that information may be filed without such examination against fugitives from justice within the meaning of the constitution and laws of the United States and against corporations; *but no failure or omission of such preliminary examination shall in any case invalidate any information in any court unless the defendant shall take advantage of such failure or omission before pleading to the merits by a plea in abatement.*"

No plea in abatement was interposed and therefore the information in any event was not invalidated. *Birmingham v. State,* 145 Wis. 90, 129 N. W. 670; *Stetson v. State,* 204 Wis. 250, 235 N. W. 539.

While the defendant appears to be familiar with sec. 355.17, Stats., which authorizes the district attorney to file

such information as the facts brought out on the preliminary examination warrant, he contends that that statute is unconstitutional because, by means of it, he has been deprived of his liberty without due process of law in violation of art. (amendm.) XIV of the constitution of the United States and so much of sec. 8, art. I, of the constitution of this state, which provides:

"No person shall be held to answer for a criminal offense without due process of law."

No cases are cited by the defendant to support his contention. He was arrested upon a warrant based upon a complaint which charged that he had obtained property by false pretenses. On that charge a preliminary examination was had which resulted in his being bound over to the municipal court for trial. Upon his application as an indigent person, a competent attorney was appointed to defend him at the expense of the county. The order of the trial court which allowed compensation to such attorney reveals that he was compensated for four days of preparation and two days at the trial. Upon the filing of the information, no request was made by either the defendant or his attorney for additional time in which to prepare for trial. He was tried by a jury, and subsequent to the coming in of the verdict, he made all of the usual motions in arrest of judgment and a motion for a new trial. A reading of the record reveals that the trial court was conscientious and just in his rulings. Before the question of the defendant's guilt or innocence was submitted to the jury the court struck from the information the second count thereof which charged that the defendant had been convicted of crimes in the states of New York, Pennsylvania, and Ohio. This was done because the trial court felt that such convictions were not properly certified and therefore were not admissible in evidence.

The defendant further contends that the evidence adduced upon the trial is not sufficient to support the verdict. We think this contention is wholly without merit. The state's testimony was in no manner contradicted. The defendant did not testify in his own behalf or produce any witnesses. The defendant further contends that he was denied the right to "demand the nature and cause of the accusation against him." There can, of course, be nothing to this contention since the information clearly charged the nature and cause of the accusation against him.

The four contentions of the defendant just considered embody all of the errors assigned, if we understand the meaning of the contentions of the defendant. It is our conclusion that the defendant was afforded a fair, proper, and impartial trial; that the evidence adduced by the state amply supports the verdict and judgment, and that the errors assigned are without merit.

*By the Court.*——Judgment affirmed.