STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

James B. RICHER, Defendant-Respondent.

Supreme Court

*No. 91–1466–CR. Oral argument December 1, 1992.—Decided March 10, 1993.*

(Also reported in 496 N.W.2d 66.)

233

234

For the plaintiff-appellant-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general,

with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-respondent there was a brief by *Mark L. Goodman* and *Osborne & Goodman, S.C.,* Sparta and oral argument by *Mark L. Goodman.*

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished *per curiam* decision of the court of appeals affirming an order of the circuit court for Monroe County, Robert W. Radcliffe, Judge, presiding, which dismissed without prejudice a second count of delivery of LSD that was added to the information filed after Richer's preliminary hearing on an earlier charge of delivery of LSD.

Wisconsin prosecutors may include counts in an information that were not initially charged in the complaint if the counts are not "wholly unrelated." State v. Burke, 153 Wis. 2d 445, 451 N.W.2d 739 (1990). In the instant case, Judge Radcliffe determined that the two counts filed against Richer were separate transactions occurring nine days apart and thus did not meet the "wholly unrelated" test outlined in Burke. The court of appeals also focused on the nine day interval between the drug deliveries and affirmed the dismissal.

The issue raised by this review is whether two crimes that are factual replications but which are separated by nine days, are not "wholly unrelated" so as to permit the state to include the second charge in its information based entirely upon evidence adduced at the preliminary hearing relating to the first charge. Contrary to the reasoning of the circuit court and the court of appeals, we do not find the nine day interval dispositive of the issue. Instead, we conclude that no basis can be found "within the confines of the evidence" adduced at

Richer's preliminary hearing to support the second count—neither evidence in support of the second count nor evidence linking the two transactions. We therefore affirm the decision of the court of appeals.

In a complaint filed on December 20, 1990, Richer was charged with one count of delivery of a controlled substance, LSD. At Richer's preliminary hearing, on December 27, 1990, the state introduced evidence only with regard to an alleged November 21, 1990 violation. The preliminary hearing on the basis of that evidence resulted in a finding of probable cause to believe Richer had committed "a felony" as required under sec. 970.03, Stats.[1] He was bound over for trial.

On January, 23, the state filed an information that charged Richer with two counts of delivery: the delivery on November 21st which was the subject of the preliminary examination and a second delivery that occurred nine days later, on November 30, 1990. Richer filed a motion to dismiss the second count because the state's failure to introduce evidence specific to the November 30th charge at the preliminary hearing precluded the court from establishing probable cause to support the second count. Richer argues that pursuant to sec. 971.01, Stats., the state may include counts in the information only "according to the evidence" adduced at the preliminary hearing.[2]

---

[1] Section 970.03 provides in part:

**Preliminary examination. (1)** A preliminary examination is a hearing before a court for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant. . . .

Wis. Stats., § 970.03(1) (1989–90). The current version of subsection (1) remains unchanged.

[2] Section 971.01 states in part:

At the hearing held on the motion to dismiss, the state introduced a "Statement of Facts" to support its contention that the two counts were exact replications of each other: both allegedly involved the same participants, the same quantity and kind of drug, the same witnesses, and the same price.[3] The prosecutor asserted that the two counts were not "wholly unrelated" and, therefore, that the evidence introduced in support of the initial charge applies equally to the newly added count.

To resolve the issue presented in this dispute, we must examine this court's opinion in *State v. Burke* which construed sec. 971.01, Stats., and discussed the authority of prosecutors to add counts to an information that are not "wholly unrelated" to the initial charge. The interpretation of statutes is a question of law which this court reviews without deference to the decision of the

---

**Filing of the information. (1)** The district attorney shall examine all facts and circumstances connected with any preliminary examination touching the commission of any crime if the defendant has been bound over for trial and . . . shall file an information according to the evidence on such examination subscribing his name thereto. (Emphasis supplied).

Wis. Stats., § 971.01(1) (1989–90). The current version of the statute remains unchanged.

[3] Although Richer did not dispute the facts recited in the Statement at the hearing on the motion to dismiss, he later raised questions relating to the alleged identification of the substance involved in the November 30th transaction. Responding to questions during oral argument, the state acknowledged that only the blotter paper obtained from Richer in the November 21st transaction had actually undergone drug identification testing. The Statement assumes that the blotter-like paper obtained on November 30th was in fact the same drug as that obtained in the earlier transaction.

238

lower court. *State v. Sher*, 149 Wis. 2d 1, 8, 437 N.W.2d 878 (1989).

*State v. Burke* involved a defendant who initially was charged in the complaint with four counts of second-degree sexual assault. After the case had been called for the preliminary hearing but before the taking of any testimony, the state moved to dismiss all but one count of the complaint. Subsequent to the defendant being bound over on the remaining count the state filed an information charging five counts of second-degree sexual assault. In *Burke,* this court listed seven factors for determining whether the five charges contained in the information were "wholly unrelated": the affinity of parties and witnesses, the charges' geographical and temporal proximity, the physical evidence required for conviction, and the defendant's motive and intent. *Burke,* 153 Wis. 2d at 455.

The state acknowledges that these seven factors should guide this court in deciding when multiple charges are not "wholly unrelated." Under the state's interpretation of *Burke,* however, the presence or absence of one or more of the seven factors would not control the court's decision. Rather, the state asserts, each serves to guide the court's review of the district attorney's exercise of authority. To the contrary, Richer argues, and the court of appeals concluded, that Burke requires that all seven of the factors listed be satisfied for the state to determine that the new counts included in a criminal information are not "wholly unrelated" from the initial charges.

We disagree with both of these interpretations and focus instead on the underlying rationale for including the seven factors in the *Burke* analysis. The primary concern in Burke was to set forth factors that would protect the purposes of the preliminary hearing process

239

and also, in an appropriate circumstance, allow additional counts to be included in the information. The seven factors form a general framework for determining whether counts can be added to the information and yet meet the goals of the preliminary hearing. To make such a determination, one must examine the role that the preliminary hearing plays in Wisconsin criminal procedure.

The state is correct in its assertion that the express statutory purpose of the preliminary hearing is to determine whether probable cause exists that the defendant has committed a felony which warrants binding the defendant over for trial. Requiring a finding of probable cause protects the defendant's due process rights and guards against undue deprivations of the defendant's liberty. Were these the sole purposes of the preliminary hearing, however, the Burke court would not have had to limit the inclusion of new counts in the information to those that were not "wholly unrelated" to the initial charges. Thus, if the only purpose of the preliminary hearing were to establish probable cause that a felony had been committed then *Burke* could have held that the state might include any felony in the information once the defendant has been bound over for trial.

This court repeatedly has held that the purpose of the preliminary hearing includes protections beyond those expressed in the statutory language of sec. 970.03(1), Stats. This court has stated that:

> the object or purpose of the preliminary investigation is to prevent hasty, malicious, improvident, and oppressive prosecutions, to protect the person charged from open and public accusations of crime,

240

to avoid both for the defendant and the public the expense of a public trial, and to save the defendant from the humiliation and anxiety involved in public prosecution, and to discover whether or not there are substantial grounds upon which a prosecution may be based.

*Thies v. State,* 178 Wis. 98, 103, 189 N.W. 539 (1922).[4] Clearly the preliminary hearing serves the interests of both the defendant and the state. Expense, delay, anxiety and embarrassment are all costs associated with prosecuting criminals but which are also born by the community.

The state contends that these goals are met by ensuring that probable cause has been found that the defendant committed a felony.[5] Once bound over, the state argues, the defendant has already been embar-

---

[4] *See also, e.g., State v. Burke,* 153 Wis. 2d at 464 (Abrahamson, J., dissenting); *State v. Blalock,* 150 Wis. 2d 688, 442 N.W.2d 514 (Ct. App. 1989); *State v. Dunn,* 121 Wis. 2d 389, 398, 359 N.W.2d 151 (1984); *State v. Hooper,* 101 Wis. 2d 517, 544–45, 305 N.W.2d 110 (1981). For commentary on preliminary hearings generally see Miller and Dawson, *Non-Use of the Preliminary Examination: A Study of Current Practices,* 1964 Wis. L. Rev. 252; Mark I. Levy, *The Function of the Preliminary Hearing in Federal Pretrial Procedure,* 83 Yale L.J. 771 (1974); Eighteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals (1987–1988), *Preliminary Proceedings,* 77 Geo. L.J. 695 (1989).

[5] The state relies in part on *Bailey v. State* to support its contention that the preliminary hearing is intended to do nothing more than establish probable cause that the defendant committed a felony. In *Bailey,* this court distinguished between what it termed the preliminary hearing's "main purpose," namely the finding of probable cause, and what it termed the hearing's "collateral benefits," namely the advantages derived by the defendant. *Bailey,* 65 Wis. 2d 331, 343–44, 222 N.W.2d 871 (1974).

rassed, publicly accused, humiliated, and deprived of liberty. Hence it should no longer matter whether the added counts in the information form an independent basis for binding the defendant over for trial.

We disagree with the state's restrictive view of the role of the preliminary hearing. The stated objectives recited in our recent opinions of preliminary procedures, such as avoiding hasty, malicious, improvident, and oppressive prosecution, go beyond the state's narrow view of the purpose of the preliminary hearing. The fact that probable cause has been found regarding the defendant's participation in a particular charge says nothing about that same defendant's participation in any other counts that later might be included in the information. The need to protect defendants from harassing and oppressive prosecution goes directly to the specific charges on which they are tried, not those charges for which they were originally bound over.

The proceeding must also be adequate to fulfill the defendant's constitutional right to know the nature and cause of the charges against which he must defend. Although the preliminary hearing is unquestionably a creature of the legislature, this court has acknowledged

We caution against finding undue significance in the Bailey court's terminology. A fuller appreciation of Bailey must note that, embedded in its discussion of principle and collateral benefits, the court quoted from *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967), in which this court stated that:

> [t]hese incidental fringe benefits, however, are not the real purpose of a preliminary examination, which is intended 'to protect the accused from hasty, improvident, or malicious prosecution and to discover whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty.'

*Whitty,* 34 Wis. 2d at 287 (quoting *Johns v. State,* 14 Wis. 2d 119, 122, 109 N.W.2d 490 (1961)).

that the proceeding implicates certain constitutional rights. *State v. Dunn,* 121 Wis. 2d 389, 394 & n.6, 359 N.W.2d 151 (1984).

Over the years, the courts have formulated different tests to achieve all of these goals should the state elect to add counts to an information after the preliminary hearing. Since 1877, Wisconsin courts without fail have relied upon the following test: whether any added charges find support within the confines of the evidence adduced at the preliminary hearing. Initially, the courts applied the test narrowly to permit only those charges which "the testimony taken on examination shows that [the defendant] has committed." *State v. Leicham,* 41 Wis. 565, 574 (1877).[6] In related decisions, however, the court made clear that the factual basis on which the added charges were premised could consist solely of inferential and circumstantial evidence. The preliminary hearing is intended to be "a summary proceeding to determine essential or basic facts as to probability," not a "full evidentiary trial on the issue of guilt beyond a reasonable doubt." *Dunn,* 121 Wis. 2d at 396-97. Accordingly, the probable cause requirement is satisfied "when there exists a believable or plausible account of the defendant's commission of a felony." *Id.* 398. *See also Bailey,* 65 Wis. 2d at 342; *Hooper,* 101 Wis. 2d at 540, 543.

---

[6] Nevertheless, the *Leicham* court allowed the district attorney's addition of a count to the information because as it stated:

> In the present case the testimony on the examination was taken down very imperfectly; yet we think it shows that the offense charged in the information was committed, and that there is probable cause to believe the defendant guilty thereof. It follows that the information was properly filed.

*Leicham,* 41 Wis. at 575.

Consistent with this view of the probable cause requirements, the court eventually pushed the borders of the *Leicham* test one step further to include those counts that were not "wholly unrelated" to charges having a factual basis in the record. *State v. Mark,* 228 Wis. 377, 384, 280 N.W. 299 (1938); *State v. Fish,* 20 Wis. 2d 431, 122 N.W.2d 381 (1963).[7] From its inception, the "wholly unrelated" test has been utilized in a transactional context.[8] In *Mark,* the state charged the defendant with obtaining jewelry by false pretenses with intent to defraud, but later filed an information charging the defendant with the crime of feloniously taking and converting the jewelry to his own use. The court rejected the defendant's objection to this exercise of prosecutorial discretion, stating that while it would

[7] While prior court decisions have disputed whether *Mark* expanded or merely restated the test set forth in *Leicham,* it is undisputed that the term "not 'wholly unrelated' " was first used in *Mark v. State.* This term appears frequently in the decisions of this court, most recently in our *Burke* decision. Accordingly, in the instant case we accept the phrase as it has been used over the years and do not readdress the legal history that has arisen surrounding the genesis of this term.

[8] Even prior to the formulation of the "not 'wholly unrelated' " standard, this court exhibited a similar concern with whether the charges contained in the information were transactionally related to the evidence adduced at the preliminary hearing. *See, e.g., Leicham,* 41 Wis. at 578 (upholding prosecutor's decision to add one count of fraudulent conversion to the initial charge of larceny on the ground that "both counts were evidently predicated upon the same fraudulent acts of the defendant."); *Thies,* 178 Wis. at 102 (upholding state's decision to prosecute defendant on the charge of incest rather than rape because "both charges relate to a single transaction or set of circumstances.").

be improper . . . to file an information charging a crime wholly unrelated to *the transactions or facts considered or testified* to at the preliminary examination . . . [in the instant case] the facts adduced at the preliminary examination . . . were substantially the same as those adduced at the trial. (Emphasis supplied.)

*Mark,* 228 Wis. at 384. In more recent decisions involving multiple count prosecutions, this court has continued to utilize the standard for the not "wholly unrelated" test in light of the evidence adduced at the preliminary hearing. It should be noted that the "wholly unrelated" language of *Mark* was not its holding. In *Mark,* the transaction was the same; the court merely permitted the state to substitute in the information a charge arising out of the very transaction that provided the elements for the charge utilized for the bind over. The court ascertained that all the elements needed for the amended charges were the elements that were directly addressed at the preliminary to support the original. Hence it allowed the substitution. This fully comported with the *Leicham* test that required the evidence in the preliminary to support the substituted or additional charge.

As stated *supra, Burke* involved a situation in which the prosecutor filed an information containing four counts that had not directly been addressed during the preliminary hearing. Nevertheless, this court concluded that the charges were not "wholly unrelated" because of their close nexus or transactional relationship to the charge on which testimony had been taken. All of the counts involved acts of sexual assault that occurred between the same parties in a confined space and virtually without interruption. Although the assault occurred over the course of a few hours, the court found that the

245

defendant engaged in a single ongoing episode of sexual assault.

Similarly, in *Bailey,* this court permitted the state to include in the prosecutor's information counts relating to the sexual assault of a minor based on the evidence introduced at the preliminary hearing in support of the initial charge of first-degree murder. Although the counts were not similar in terms of the elements of the criminal acts involved, as is the case in the instant dispute, the counts were nonetheless all transactionally related to the defendant's abuse of the minor victim—beginning with the child's abduction and ending in her murder. The different counts arose from a common nucleus of facts relating to the defendant's interaction with the child.

The seven factors relied upon in *Burke* and in *Bailey* for determining when multiple charges are not "wholly unrelated" are indicative of this court's continuing efforts to further the underlying legislative and constitutional goals of the preliminary hearing while also affording prosecutors increasing flexibility in their charging decisions. It was in furtherance of these goals that the *Burke* court wanted to ensure that all of the counts in the information be related to each other in some manner, even those not initially included in the complaint. Time, space, geography, parties, intent and motive, all implicate just such a transactional nexus between the counts.

Our interpretation of the word "related" as used in the *Burke* decision is consistent with accepted definitions. Black's Law Dictionary, for example, defines the term: "standing in relation; connected; allied; akin." Likewise, Webster's New Collegiate Dictionary (1980 ed.) offers the following synonyms: "related, cognate, kindred, allied, affiliated *shared meaning element:* con-

nected by or as if by close family ties." Both sets of definitions suggest a transactional relationship that transcends mere similarity. Words such as "connected" or "affiliated" tend to impel our holding herein that the counts contained in the information must flow from the same transaction for which evidence has been introduced at the preliminary hearing.

Contrary to the state's assertions, we are not imposing new restrictions on the prosecutor's charging discretion. Rather, we are interpreting *Burke* and *Bailey* within the historical framework of the "wholly unrelated" test. From the "confines of the evidence" test of *Leicham* to the "wholly unrelated" test of *Mark,* this court has recognized the need to balance the competing interests of the state and defendant. Today's holding that all charges included in the information must at a minimum be transactionally related to charges which are themselves supported by evidence adduced at the preliminary hearing, clarifies well-established and long-standing court procedure.

In contrast to this transactional standard, the state urges the court to adopt an approach to determine when two charges are not "wholly unrelated" that would apply the standards utilized in joinder/severance law. We reject the state's proposal as both statutorily inappropriate and without precedent. The rule of joinder permits courts to try multiple charges together.[9] Unlike prelimi-

---

[9] Section 971.12 provides in part:

**Joinder of crimes and of defendants. (1)** Joinder of Crimes. Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on

---

nary proceedings which, as indicated supra, were designed to protect defendants against undue state intrusions, the rule of joinder was designed primarily as a tool for encouraging judicial economy.[10] In applying the rule of joinder, courts balance the evidentiary benefits to be derived from joining otherwise similar charges with the potential prejudice to the defendant from juror confusion or misapplication of evidence. We conclude that the rationale of the rule of joinder is inapposite to that of the preliminary hearing.

Moreover, as is obvious from the instant case, two charges which rely in part on proof of the same elements and the same parties may be otherwise completely unrelated to each other. In *State v. Hamm,* the court concluded that before joining multiple counts, the judge must establish that the crimes are of the same type, occurred over a relatively short time period, and share overlapping evidence. *Hamm,* 146 Wis. 2d 130, 138, 430

2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

Wis. Stats., § 971.12(1) (1989-90). Current version of the statute remains unchanged.

[10] The Judicial Council Committee note to sec. 971.12(1) makes clear that the section is a restatement of the federal rules of civil procedure. In *Bruton v. U.S.,* the Court stated that the purpose of joinder provisions is "to promote economy and efficiency [in judicial administration] and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton,* 391 U.S. 123, 131 n.6 (1968). For its part, this court has similarly ruled that "joinder will be allowed in the interest of the public in promoting efficient judicial administration and court fiscal responsibility in conducting a trial on multiple counts in the absence of a showing of substantial prejudice." *State v. Hall,* 103 Wis. 2d 125, 141, 307 N.W.2d 289 (1981).

N.W.2d 584 (Ct. App. 1988). These three criteria were designed to minimize the prejudice to defendants, not to ensure that the crimes are transactionally related.[11]

Having concluded that state must assume the burden of establishing the transactional link between the charges before including additional counts in the information not otherwise supported by independent fact finding at the preliminary hearing, we turn to consideration of the facts of this case. The state filed a complaint charging Richer with delivery of a controlled substance on November 21st, 1990. At the December 27, preliminary hearing, the state introduced the following evidence in support of its allegation: (1) testimony from undercover police officer David Parks regarding the sequence of events surrounding the November 21st transaction; (2) testimony from detective sergeant Ron Pearson tracing the transfer of the drugs from officer Parks to the crime lab for identification; and (3) evidence of the laboratory analysis of the drugs received during the November 21st transaction.

None of the evidence elicited at the hearing directly or indirectly implicated the November 30th drug deal that was later included in the information filed against Richer. Nor did the officers' testimony indicate an ongoing sting operation from which the court might have inferred a course of conduct incorporating subsequent drug deliveries.[12] Although the November 21st and

---

[11] Because we conclude that the November 30th transaction was not properly included in the information we have no reason to determine whether, had the charge been properly brought, it could have been joined for trial with the November 21st incident under the provisions of sec. 971.12(1), Stats.

[12] On cross-examination, Officer Parks explained that he and his informant had split the $500 cost for the drugs during the November 21st transaction in order to lay the groundwork for

November 30th transactions were similar in many respects, they were in no way shown to be connected to each other.

Contrary to the decisions of the circuit court and the court of appeals, we do not base this determination on the nine day interval between the two drug sales. We believe that it is unwise to determine arbitrarily how much time must pass between transactions before they are rendered "wholly unrelated." There well may be episodes of a single transaction that occur over a much greater span of time than nine days but yet are clearly linked transactionally. Neither time, location, parties, nor geography alone indicates whether two charges are "wholly unrelated." Rather than focus on each of the factors outlined in Burke and Bailey individually, we conclude that all seven factors must be considered as components of a broader test of transactional relationship.[13] Here there is nothing in the evidence from which

possible future drug deals. "To make it look," as Parks explained, "like [the informant] was putting part in and I was putting part in, a joint venture." Although Officer Parks' testimony indicates a desire on the part of the police to create the illusion of a joint venture, no evidence was introduced showing that such a joint venture was presently anticipated or ongoing. Accordingly, we do not find Parks' testimony sufficient to support the state's assertion that the November 30th transaction was simply the next installment in Richer's ongoing course of drug dealing conduct.

[13] We do not, however, conclude that all seven factors must be affirmatively established by the state in every case. The question is whether the consideration of the factors present leads to the reasonable conclusion that the charges added to the information are transactionally related to the crime for which the defendant was bound over for trial. We agree with the state that while all seven factors are relevant to the prosecutor's exercise of discretion, there is no requirement that all seven factors be satisfied.

250

we may infer the November 30th deal was transactionally related to the sale of LSD on November 21st.

The state also argues that dismissing the second count improperly limits the district attorney's discretionary authority to initiate prosecutions. We think not. The state confuses the district attorney's discretionary authority to file charges with the checks the legislature has placed on the quantum and nature of the evidence that must be adduced before a charge can be brought in the circuit court.[14] Moreover, we find the state's reliance on the recent decision in *State v. Annala* to be misplaced. Annala involved a district attorney's decision to charge the defendant with first-degree sexual assault of a minor more than four years after the incident occurred. The court rejected the defendant's assertion that the district attorney had acted on improper motives, citing the district attorney's discretionary authority in deciding when to initiate prosecution. The issue in *Annala* was whether the district attorney abused his prosecutorial discretion in filing any charges against Annala, not whether the specific charges with which Annala was charged were beyond the confines of the evidence adduced at a preliminary hearing. *State v. Annala,* 168 Wis. 2d 453, 484 N.W.2d 138 (1992).

---

[14] Prior case law clearly distinguishes between the role of the judge and that of the district attorney in initiating prosecutions. The judge retains sole responsibility for determining whether probable cause exists to warrant binding the defendant over for trial. Once the defendant has been bound over, however, it is up to the district attorney to "examin[e] the testimony received at the preliminary hearing and issue[ ] the appropriate charge." *State v. Hooper,* 101 Wis. 2d at 531. The district attorney is afforded great latitude in making this determination as long as the charge rests solely "within the confines of the evidence introduced at the preliminary examination." *Id.* at 534.

The issue in dispute in the instant case is not whether the district attorney may file charges against Richer for the second transaction. All parties agree that the state is free to refile charges against Richer for the November 30th delivery. The only question with which this court is herein concerned is whether the district attorney overstepped his statutory authority as interpreted with consistency by this court by filing an information that contained a count "wholly unrelated" to the evidence adduced at Richer's preliminary hearing. We conclude that he has and therefore affirm Judge Radcliffe's dismissal of the second count.

The state maintains that whereas in *Annala* the district attorney was accused of prosecutorial misconduct, here, Richer levels no such allegations. The district attorney is not alleged to have brought the second count believing the evidence to be insufficient to support a conviction, nor is the district attorney accused of trying to coerce a plea bargain by including additional counts in the information. According to the state, the fact that the prosecutor acted in good faith and absent "personal bias or excessive zeal" indicates that reversing the decision of the court of appeals in this instance would have little impact on the control of future prosecutorial decisions.

We think this argument springs from a misunderstanding of sec. 971.01(1), Stats., the history of the application of the statute, the rationale of the circuit court and the court of appeals in this case, and the rationale which impels our holding today. We do not consider the action of the district attorney herein as misconduct. Rather we think it evidences a misunderstanding of the standards that must be applied if a prosecutor in his discretion wishes to add counts subsequent

to the holding of a preliminary. We have no reason to believe that district attorneys will wilfully or inappropriately add counts in contravention of today's decision. And while it would have been appropriate for the prosecutor to have separately brought the November 30th charge and made it the subject of an additional preliminary, the course of conduct pursued has given this court an opportunity to explain the holding of Burke and its predecessors.

From our decision in *Leicham* to our recent decision in *Burke* we have seen a broadening of prosecutorial discretion—from a rule limiting charges to those supported "strictly within the confines of the evidence" adduced at the preliminary to a rule granting prosecutors the discretion to charge in the information any felony that is "not wholly unrelated" to the initially charged crime. The common denominator in all of these decisions was that the charges be related to each other—either from an evidentiary viewpoint or a transactional one. We conclude, however, that mere congruency of crimes, i.e., that they are factual replications in their elements and the persons involved, does not satisfy either the evidential or transactional test. So long as we adhere to these time honored standards evolved over the course of time from Leicham to Burke the constitutional and statutory purpose of the preliminary examination will be preserved. To accept the open ended similarity or congruency test espoused by the state would eviscerate the purposes of the preliminary examination set forth in sec. 970.03(1), Stats., and discussed in *Theis v. State,* 178 Wis. at 103.

We conclude that a felony not charged in the preliminary examination can be made a count in a subse-

quently filed information if there is evidence direct or inferential in respect to that felony adduced at the preliminary or if the subsequently charged felony is demonstrated by the state to be transactionally related, i.e., "not wholly unrelated" to one or more of the felonies for which the defendant has been bound over for trial.

Because those conditions are here not satisfied in respect to the subsequently charged felony, the circuit court correctly dismissed the count, and the court of appeals correctly affirmed that dismissal.

*By the Court.*—Decision of the court of appeals affirmed.