STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert KOCH, Defendant-Appellant.

Supreme Court

*No. 91-1604-CR. Oral argument January 7, 1993.—Decided May 10, 1993.*

(Also reported in 499 N.W.2d 152.)

685

686

For the defendant-appellant there were briefs and oral argument by *Donald J. Bielski,* Kenosha.

For the plaintiff-respondent the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JON P. WILCOX, J. This case comes to the court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. The defendant, Robert Koch,[1]

---

[1] "Robert Koch" is one of approximately thirty-four aliases used by the defendant. The defendant is known throughout the law enforcement community as the "Sweetheart Swindler." The

was granted leave to appeal nonfinal orders of the circuit court denying his motions to dismiss the charges against him or in the alternative to suppress evidence obtained during an allegedly unreasonable delay in bringing him before a magistrate for a judicial determination of probable cause to support his warrantless arrest. The primary issues presented in this case concern the retroactive effect of a United States Supreme Court decision, *County of Riverside v. McLaughlin,* 111 S. Ct. 1661 (1991), which requires that a judicial determination of probable cause be made within 48 hours of a warrantless arrest and whether such a determination was made in this case.[2] We conclude that the 48-hour rule of *Riverside* applies retroactively to all cases not yet final and that the rule was not satisfied in this case. We affirm.

The relevant facts in this case are not in dispute. On March 17, 1991, the defendant met Kathleen Brand at a singles dance in Kenosha, Wisconsin. By March 20, 1991, the defendant and Brand agreed that they would be married. On March 22, 1991, Brand gave the defendant $10,200 which he was to combine with his own money to buy a certificate of deposit for Brand.

Joyce Gould, a friend of Brand, became concerned about the speed at which Brand and the defendant's relationship was progressing. Gould was also suspicious of the defendant's representation to Brand that he would take care of her financial circumstances. Gould hired David Ellis, a private investigator, to verify the defendant's representations regarding his identity and business connections. The defendant told Brand that he was a widower and that he was in the clothing business in

---

defendant was featured on a reality television show that asks viewers to assist in solving crimes.

[2] Additional issues raised by the defendant are also addressed in this opinion.

New York city. Ellis was unable to verify the defendant's identity or employment information. Upon meeting with no success, Ellis contacted Brand on the morning of March 28, 1991, and indicated that he wished to confront the defendant.

At 4:30 p.m. on March 28, 1991, Ellis and Pleasant Prairie Police Sergeant Paul Ratzburg, went to the Budgetel Motel where the defendant was staying in Pleasant Prairie, Wisconsin. Ellis entered the defendant's motel room while Sergeant Ratzburg waited out of view. Ellis identified himself as a concerned friend of Brand. When the defendant refused to cooperate with Ellis's questioning, Sergeant Ratzburg was called into the room.

In response to Sergeant Ratzburg's request for identification, the defendant produced a Kentucky identification card. Sergeant Ratzburg became suspicious when the defendant could not state the address or social security number on the card. Further, Sergeant Ratzburg suspected the identification card to be false because it did not contain a state seal or the signature of the secretary of state and the back of the card was blank.

The defendant denied making any arrangements with Brand regarding investing her money and he refused to disclose the location of the money. The defendant indicated that he could return Brand's money in 48 hours.

During the questioning, Ellis noticed a blue folder with Brand's name on it. When Ellis picked up the folder, the defendant objected by seizing the other end. A struggle occurred which was broken up by Sergeant Ratzburg. As Ratzburg took possession of the folder, a white envelope fell out. The defendant grabbed for the envelope and struggled with Sergeant Ratzburg while attempting to destroy the envelope and its contents. The

envelope contained a check belonging to Renae Dohrer of Coralville, Iowa. The check was payable to "Kathy Brand & Robert Koch" in the amount of $22,000. The check bore the signature of Renae T. Dohrer and was dated April 3, 1991. Sergeant Ratzburg placed the defendant under arrest for obstructing an officer.

The defendant was arrested without a warrant on Thursday, March 28, 1991, at approximately 5:00 p.m. and was placed in the Kenosha County jail. This was the Thursday before Good Friday and Easter weekend that year.

The next day, March 29, Detective Kenneth Kopesky of the Kenosha Police Department, applied for and received a search warrant for the defendant's motel room. Evidence seized during the search included checks belonging to Kathleen Brand, Renae Dohrer and Cristine Bolton; a handgun allegedly owned by Cristine Bolton; ten identification cards from various states, all with different names but bearing the photo of the defendant; a U.S. Postal Service change of address form signed by Robert Koch and directing that all mail sent to his motel room be returned to sender; letters allegedly signed by the defendant; an address book; and other miscellaneous items.

The defendant appeared before a court commissioner for an initial appearance at 1:00 p.m. on Monday, April 1, 1991. This was approximately 92 hours after his warrantless arrest. The defendant was served with a five count criminal complaint. The complaint charged the defendant with: (1) felony theft by fraud in violation of sec. 943.20(1)(d) and (3)(c), Stats., for taking Brand's money; (2) felony forgery in violation of sec. 943.38(1)(a), Stats., for falsely making a check on the account of Renae Dohrer in the amount of $22,000; (3) obstructing an officer in violation of sec. 946.41(1),

Stats., with respect to the defendant's conduct towards Sergeant Ratzburg; (4) and (5) misdemeanor theft in violation of sec. 943.20(1)(a), Stats., for taking various checks belonging to Kathleen Brand and Renae Dohrer. The court commissioner made a written finding in the complaint that it stated probable cause. Bond was set at $630,000 cash.

On April 5, 1991, the circuit court granted the defendant's motion to dismiss the obstruction charge. A preliminary hearing was held on April 10, 1991, resulting in a bindover decision. The defendant was arraigned on May 9, 1991, on an information charging him with two felony and five misdemeanor counts. The defendant was newly charged with two counts of misdemeanor theft for taking checks and a .25 caliber pistol belonging to Cristie Bolton. He was also newly charged with obstructing an officer for giving the Kenosha Police Department a false name.

The defendant filed several motions following the arraignment. The defendant filed motions to dismiss the charges against him and suppress evidence on grounds of unreasonable delay in bringing him before a magistrate for a judicial determination of probable cause to support his warrantless arrest. The circuit court denied all of the defendant's motions. The defendant requested leave from the circuit court to take an interlocutory appeal to the court of appeals. We accepted certification from the court of appeals.

The court of appeals certified the following issues to be resolved by this court:

> (1) What is the test for determining if new court-made rules of criminal procedure are to be applied retroactively to cases that are not yet final?
>
> (2) Are persons arrested without warrants entitled to a prompt judicial determination of probable

cause before any significant restraint is placed on the accuseds' liberty following the warrantless arrest?

The defendant raises the following additional issues:

(3) Is evidence seized during a period of unreasonable delay stemming from the state's failure to bring the defendant before a judge for a probable cause determination subject to the exclusionary rule.

(4) Did sufficient facts exist to establish probable cause and seizure of evidence at the time of the defendant's arrest?

(5) Was sufficient evidence adduced at the preliminary hearing to support a bindover as to Count 1 in the complaint alleging a violation of sec. 943.20(1)(d) and (3)(c), Stats., theft by fraud?

(6) Was sufficient evidence adduced at the preliminary hearing to support bindover as to Count 2 alleging a violation of sec. 943.38(1)(a), Stats., forgery?

(7) Was the charging of Counts 3, 4, and 7 in the information a proper exercise of prosecutorial discretion?

## I.

The first issue we must address concerns the retroactive effect of the United States Supreme Court decision in *Riverside* which requires that a judicial determination of probable cause be made within 48 hours of a warrantless arrest. *Riverside* 111 S. Ct. at 1670. *Riverside* was decided approximately six weeks after Koch was arrested.

In the past, this court applied three criteria, modeled after the criteria applied by the United States Supreme Court, for determining whether a new rule of criminal procedure should be applied retroactively. *See State v. Neave,* 117 Wis. 2d 359, 376, 344 N.W.2d 181

(1984); *State v. Wisumierski,* 106 Wis. 2d 722, 729, 317 N.W.2d 484 (1982). The criteria used were: (1) the effect of the new rule on the fact finding process; (2) the extent of reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards. *Neave,* 117 Wis. 2d at 376.

The United States Supreme Court abandoned these three criteria in favor of a new approach in *Griffith v. Kentucky,* 479 U.S. 314 (1987). In *Griffith,* the Court held that:

> a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.

*Id.,* 479 U.S. at 328.

We hold that the *Griffith* rule for determining whether to apply a new rule of criminal procedure retroactively is applicable in Wisconsin and replaces the three criteria approach previously applied in this state. Applying *Griffith* to the present case, the *Riverside* 48-hour rule must be applied retroactively to this case which is not yet final.[3]

## II.

The second issue before this court concerns how the *Riverside* 48-hour rule is to be applied in Wisconsin and

---

[3] This case is not yet final because Koch's prosecution is pending, no judgment of conviction has been entered, the right to a state court appeal from a final judgment has not been exhausted, and the time for certiorari review in the United States Supreme Court has not expired. *See Griffith,* 479 U.S. at 321 n.6.

whether it was complied with in the case. We begin with a discussion of *Riverside* and its predecessor *Gerstein v. Pugh,* 420 U.S. 103 (1975).

In *Gerstein,* the Supreme Court held that the Fourth Amendment to the United States Constitution[4] requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest. *Gerstein,* 420 U.S. at 124–25. In *Riverside,* the Court defined "prompt" to mean that a judicial determination of probable cause must be made within 48 hours of arrest barring a bona fide emergency or other extraordinary circumstance. *Riverside,* 111 S. Ct. at 1670. Intervening weekends and holidays do not constitute an extraordinary circumstance excusing compliance with the 48-hour rule. *Id.*

No Wisconsin case has ever adopted the *Gerstein* and *Riverside* rule or provided a precise guide on how to apply that rule in this state.[5] Presently, Wisconsin's criminal procedure requires that any person who is

---

[4] The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[5] The court of appeals did note the *Riverside* 48-hour rule in *State v. McKinney,* 168 Wis. 2d 349, 355, 483 N.W.2d 595 (Ct. App. 1992), but did not provide any guidance on how that rule is to be applied in Wisconsin.

Most of Wisconsin's trial judges have made it a practice to comply with the *Riverside* 48-hour rule by reviewing the factual allegations of the criminal complaint within 48 hours of a warrantless arrest. *See* Wisconsin Judicial Benchbooks—Criminal and Traffic, sec. CR1 (1992). The chief judges of Wisconsin's judicial administrative districts responded to *Riverside* by prepar-

arrested, with or without a warrant, must have an initial appearance before a judge within a reasonable time of the arrest. Section 970.01(1), Stats.[6] The statute does not provide for a specific time frame in which this appearance must take place. The presiding judge is given a number of tasks to perform at the initial appearance, but determining whether there is probable cause to support the warrantless arrest is not one of the enumerated tasks. *See* Sec. 970.02, Stats. Currently there is no Wisconsin statutory or case law requiring a judicial determination of probable cause within 48 hours of a warrantless arrest.

We conclude that the *Riverside* 48-hour rule is applicable in Wisconsin. The Fourth Amendment requires that a judicial determination of probable cause be made within 48 hours of a warrantless arrest.[7] When a probable cause determination is made within 48 hours of the arrest, the burden is on the arrested individual to prove that the probable cause determination was delayed unreasonably. *Riverside,* 111 S. Ct. at 1670. The Supreme Court stated:

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify

ing a form to be used by circuit court judges in making prompt determinations of probable cause to support warrantless arrests.

[6] Section 970.01(1), Stats, provides in relevant part:

**970.01 Initial appearance before a judge. (1)** Any person who is arrested shall be taken within a reasonable time before a judge in the county in which the offense was alleged to have been committed.

[7] The 48-hour rule only applies to warrantless arrests because if a warrant is issued before the arrest, a judicial officer already determined there was probable cause for the arrest when he or she issued the warrant.

the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

*Id.*

When an arrested individual does not receive a probable cause determination within 48 hours, the burden of proof shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. *Id.* Intervening weekends and holidays do not qualify for an exception to the 48-hour rule. Nor does the fact that it may take longer than 48 hours to consolidate pretrial proceedings. *Id.*

*Gerstein* and *Riverside* do not require any particular procedure for the post-arrest probable cause determination. *Gerstein,* 420 U.S. at 123; *Riverside,* 111 S. Ct. at 1668. The Supreme Court specifically allows states to combine probable cause determinations with other pretrial proceedings, so long as the determination is made promptly within 48 hours. *Gerstein,* 420 U.S. at 123–24; *Riverside,* 111 S. Ct. at 1671. In Wisconsin, the probable cause determination can be made at the initial appearance, so long as the initial appearance occurs within 48 hours of the arrest.

The probable cause determination can be made independent from the initial appearance. The probable

cause determination does not involve any adversarial rights and can be based entirely on hearsay and written testimony. *Gerstein,* 420 U.S. at 120; *King v. Jones,* 824 F.2d 324, 327 (4th Cir. 1987). The arrested person has no right to a physical appearance before a judicial officer for the probable cause determination. *King,* 824 F.2d at 327; *Blake v. Katter,* 693 F.2d 677, 681 (7th Cir. 1982). The post-arrest probable cause determination is required to fulfill the same function for suspects arrested without warrants as the pre-arrest probable cause determination fulfills for suspects arrested with warrants. *King,* 824 F.2d at 327. In both cases, a neutral magistrate is required to determine whether there is probable cause to believe an offense was committed by the suspect.[8] *See Gerstein,* 420 U.S. at 111; *State v. Paszek,* 50 Wis. 2d 619, 624, 184 N.W.2d 836 (1971); Sec. 968.04(1), Stats. The probable cause determination which is made when an arrest warrant is issued obviously does not involve an adversary hearing or personal appearance; therefore, these should not be requirements for a probable cause determination following a warrantless arrest.

In sum, we conclude that in order for Wisconsin criminal procedure to comply with the requirements of *Gerstein* and *Riverside* a judicial determination of probable cause to support a warrantless arrest must be made within 48 hours of the arrest. This probable cause determination can be made at a nonadversarial proceeding and the arrested person is not required to physically appear before the judge. The probable cause determination can be made at the initial appearance or in combi-

---

[8] The probable cause finding can be based upon the complaint, affidavits, or testimony of complainant or witnesses under oath. Sec. 968.04(1), Stats.

nation with any other pre-trial proceeding, so long as the determination is made within 48 hours of the arrest.

In the instant case, the defendant did not appear before a court commissioner until over 92 hours after his warrantless arrest. The State failed to prove the existence of a bona fide emergency or other extraordinary circumstance justifying the delay beyond 48 hours.[9] No judicial determination of probable cause to support the defendant's warrantless arrest was made in this case within 48 hours of the arrest.

We next must address what consequences flow from the failure to comply with the requirements of *Riverside.* The defendant argues for the suppression of all evidence seized following a warrantless arrest when the suspect does not receive a probable cause determination within 48 hours of the arrest. The defendant argues that suppression of evidence is necessary to encourage compliance with the *Riverside* rule.

There is no settled law on the remedy for non-compliance with *Riverside.* In the instant case, the failure to comply with *Riverside* did not result in a continuation of custody which otherwise would not have occurred because, as we conclude *infra* Part III, the arrest was made on probable cause which did not dissipate. *See* 2 Wayne R. LaFave, *Search and Seizure* sec. 5.1(f) at 425 (2d ed. 1987). The evidence obtained following the defendant's arrest was not a consequence of the *Riverside* violation. The delay in this case was not for the purpose of gathering additional evidence to justify the arrest. The evidence was obtained within 24 hours of the arrest pursuant to a judicially authorized search warrant.

---

[9] At the time of the defendant's arrest, *Riverside* had not been decided. However, as discussed *supra* Part I, *Riverside* applies retroactively to this case.

We conclude that suppression of evidence is not appropriate.

## III.

We next turn to the issue of whether sufficient facts existed at the time of the defendant's arrest to establish probable cause. The defendant moved the circuit court to suppress all evidence seized from his motel room on grounds that his arrest was without probable cause in violation of the Fourth Amendment to the United States Constitution, Article I, section 11 of the Wisconsin Constitution and sec. 968.07(1)(d), Stats.[10] The circuit court denied the defendant's motion.

Probable cause to arrest is a requirement of the Fourth Amendment of the United States Constitution, binding upon the individual states through the Fourteenth Amendment. The provisions of Article I, sec. 11 of the Wisconsin Constitution are identical to those contained in the Fourth Amendment of the United States Constitution.[11] The standards and principles surrounding the Fourth Amendment are generally applicable to the construction of Art. I, sec. 11. A finding of probable cause under federal standards will normally result in a finding of probable cause under state standards. *Paszek,* 50 Wis. 2d at 624; *Leroux v. State,* 58 Wis. 2d 671, 682, 207 N.W.2d 589 (1973).

---

[10] Section 968.07(1)(d), Stats., provides:

**968.07 Arrest by a law enforcement officer. (1)** A law enforcement officer may arrest a person when:

. . ..

(d) There are reasonable grounds to believe that the person is committing or has committed a crime.

[11] The language of the Fourth Amendment and Article I, sec. 11 is set forth *supra* at footnote 4.

The probable cause standard is defined in terms of facts and circumstances sufficient to warrant a reasonable police officer in believing that the defendant committed or was committing a crime. *Gerstein,* 420 U.S. at 111. In *Paszek* we described probable cause as follows:

> Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime. It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility, and it is well established that the belief may be predicated in part upon hearsay information. The quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case. (Citations omitted.)

*Paszek,* 50 Wis. 2d at 624–25. Probable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that the defendant probably committed a crime. *State v. Nordness,* 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986); *State v. Cheers,* 102 Wis. 2d 367, 388, 306 N.W.2d 676 (1981).

We conclude that the circumstances known to Sergeant Ratzburg at the time of the defendant's arrest would lead a reasonable police officer to believe that the defendant had committed a crime. First, immediately prior to his arrest, the defendant shoved Sergeant Ratzburg and attempted to destroy evidence. These actions in and of themselves are sufficient to justify the defendant's arrest for obstructing an officer. *See* sec.

946.41(1), Stats. The fact that the charge for obstructing an officer was later dismissed is irrelevant in determining whether Sergeant Ratzburg possessed probable cause at the time of the arrest. At the time of the arrest, Sergeant Ratzburg reasonably believed the defendant obstructed him while he was performing an act in his official capacity and with lawful authority.

Second, Sergeant Ratzburg possessed sufficient information to cause him to reasonably believe that the defendant had defrauded Brand of her money. *See,* sec. 943.20(1)(d), Stats. The defendant told Sergeant Ratzburg he had not purchased a certificate of deposit with Brand's money and repeatedly refused to disclose the location of Brand's money. Further, Ellis had fully informed Sergeant Ratzburg of his investigation into the defendant's background. Sergeant Ratzburg knew Ellis was unable to confirm the information the defendant told Brand regarding his identity and employment. Sergeant Ratzburg knew the defendant had told Brand that he was from New York, but when Sergeant Ratzburg asked for identification the defendant produced what Sergeant Ratzburg believed to be a false Kentucky identification card. The defendant was unable to state the address on the card or the social security number. Finally, the defendant's efforts to prevent Ellis from examining the folder containing Brand's name and his attempt to destroy the white envelope lead Sergeant Ratzburg to reasonably believe the defendant was attempting to destroy incriminating evidence. Based on these circumstances, Sergeant Ratzburg possessed sufficient knowledge to reasonably believe that the defendant had defrauded Brand of her money.

We conclude that probable cause existed to support the defendant's arrest.

## IV.

Next we address issues (5) and (6), as set forth above, whether there was sufficient evidence adduced at the preliminary hearing to support a bindover as to counts 1 and 2 in the complaint alleging theft by fraud[12] and forgery[13] respectively. We conclude that there was more than sufficient evidence presented at the preliminary hearing to support the defendant's bindover on both counts.

"A preliminary examination is a hearing before a court for the purpose of determining if there is probable

---

[12] The crime of theft by fraud is found in sec. 943.20, Stats., which provides in relevant part:

**943.20 Theft. (1)**   Acts. Whoever does any of the following may be penalized as provided in sub. (3):

. . ..

(d)   Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes a promise made with intent not to perform it if it is a part of a false and fraudulent scheme.

. . ..

(3)   PENALTIES. Whoever violates sub. (1): . . ..
(c)   If the value of the property exceeds $2,500, is guilty of a Class C felony.

[13] The crime of forgery is found in sec. 943.38, Stats., which provides in relevant part:

**943.38 Forgery. (1)**   Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of a Class C felony:

(a)   A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights. . . .

cause to believe a felony has been committed by the defendant." Section 970.03(1), Stats. If the court finds probable cause to believe that the defendant committed a felony, it must bind the defendant over for trial. Section 970.03(7), Stats.

The probable cause that is required for a bindover is greater than that required for arrest, but guilt beyond a reasonable doubt need not be proven. *State v. Berby,* 81 Wis. 2d 677, 683, 260 N.W.2d 798 (1978). A preliminary hearing is not a preliminary trial or evidentiary trial on the issue of guilt beyond a reasonable doubt. *State v. Dunn,* 121 Wis. 2d 389, 396, 359 N.W.2d 151 (1984). The role of the judge at a preliminary hearing is to determine whether the facts and reasonable inferences that may be drawn from them support the conclusion that the defendant probably committed a felony. The judge is not to choose between conflicting facts or inferences, or weigh the state's evidence against evidence favorable to the defendant. Probable cause at a preliminary hearing is satisfied when there exists a believable or plausible account of the defendant's commission of a felony. *Id.,* 121 Wis. 2d at 397–98; *State v. Cornelius,* 152 Wis. 2d 272, 276, 448 N.W.2d 434 (Ct. App. 1989).

On review, this court will search the record for any substantial ground based on competent evidence to support the circuit court's bindover decision. *State v. Sorenson,* 143 Wis. 2d 226, 251, 421 N.W.2d 77 (1988).

Count 1 of the complaint charged the defendant with felony theft by fraud for taking more than $2,500 from Kathleen Brand in violation of sec. 943.20(1)(d) and (3)(c), Stats. Kathleen Brand testified at the preliminary hearing that on March 22, 1991, she gave the defendant $10,200 of her money after he promised to

combine it with funds of his own to purchase a $25,000 certificate of deposit in her name. Brand testified that she never received the certificate of deposit or any confirmation of its purchase. Further, she testified that prior to giving the defendant her money she accepted a marriage proposal from him. The defendant told Brand they would be formally engaged on April 6, 1991. Brand stated that the defendant told her that he planned to stay at the Budgetel Motel until April 1, 1991, and that he then planned on moving to the Kenosha Holiday Inn.

Evidence produced at the preliminary hearing tended to show that the defendant's representations were false. A postal change of address form was put into evidence. The form was signed by Robert Koch and requested that all mail sent to the defendant's motel room be returned to sender effective March 28, 1991. Also put into evidence was a letter signed by "Robert" and addressed to Melody Allen of Raleigh, North Carolina, and dated March 28, 1991. The letter which was found in the defendant's motel room indicated that "Robert" planned on leaving Wisconsin on April 1st. Detective Albert Aiello, one of the officers who searched the defendant's motel room, testified that at the time of the search on March 29, 1991, all of the defendant's suitcases were packed and it appeared the defendant was prepared to depart. Evidence was also presented regarding the defendant's numerous aliases and false identification cards.

This evidence alone was more than enough to establish probable cause for a bindover on the theft by fraud charge. Based on this evidence, it was reasonable to conclude that the defendant probably intended to defraud Brand of her money by intentionally misrepresenting to Brand that he would invest her money in a certificate of deposit in her name.

The defendant offers alternative explanations for the evidence. However, it is not the court's role to choose between conflicting inferences at the preliminary hearing. The inference that the defendant intended to defraud Brand and leave Kenosha with her money was reasonable based upon the evidence. The evidence presented a believable and plausible account of the defendant's commission of a felony which is all that is necessary to support the bindover decision on count 1—theft by fraud.

Count 2 of the complaint charged the defendant with forgery for falsely writing a check of $22,000 on the Iowa bank account of Renae Dohrer in violation of sec. 943.38(1)(a), Stats. The check which was found in the defendant's motel room was for the amount of $22,000 payable to "Kathy Brand & Robert Koch." The check was dated April 3, 1991, and signed by Renae T. Dohrer.

The check described above was put into evidence at the preliminary hearing. Renae Dohrer testified that the check was from her personal account and that she did not prepare the check or sign it. She testified that she did not give anyone else permission to prepare or sign the check. Dohrer further testified that she met the defendant in Iowa in early March 1991. The defendant was using the alias Michael Mathieu. He responded to an advertisement a friend of Dohrer's had placed in a local newspaper seeking a male companion. Dohrer arranged to meet the defendant. During the three days Dohrer saw the defendant, he made overtures about marriage and inquired about her finances. Dohrer last saw the defendant on March 5, 1991. After the Kenosha police contacted Dohrer on March 28, 1991, she discovered that a pad of her checks was missing.

This evidence was more than enough to establish probable cause for a bindover on the forgery charge.

Based on this evidence it was reasonable to conclude that the defendant probably intended to defraud Dohrer by stealing a pad of her checks and later falsely writing one of the checks in the amount of $22,000, forging Renae Dohrer's signature on the check.

The defendant argues that because the check was post-dated it is not a writing commonly relied upon in commercial transactions and cannot be the subject of a criminal forgery charge. We reject this argument. Even if a post-dated check is not an instrument commonly relied upon in commercial transactions, it can still be the subject of a forgery charge because it is a writing whereby legal rights or obligations are created. Section 943.38(1)(a), Stats. It is not the date on a check that makes it a negotiable instrument, but rather the check itself and the financial obligation it represents. The post-dating of a check does not alter the characteristic of the check; it only requires a delay in the checks presentation for payment. A post-dated check is clearly the type of writing intended to be covered by the plain meaning of sec. 943.38(1)(a), Stats. *See* Wis. J.I.—Criminal 1491.

The defendant further argues that a false writing, in and of itself, does not render itself subject to forgery per se. The defendant asserts that there was no evidence presented that the defendant intended to defraud by making a false check because there was no evidence that he presented the check to anyone. We reject this argument. All that is necessary at the preliminary hearing stage is that a believable inference can be drawn from the evidence that the defendant intended to defraud by forging the check. The check along with the other evidence outlined above was more than enough to support a believable inference that the defendant intended to defraud Renae Dohrer by forging her check. The evi-

dence presented a believable and plausible account of the defendant's commission of a felony which is all that is necessary to support the bindover decision on count 2—forgery.

## V.

Finally, we address whether the charging of counts 3, 4, and 7 in the information was a proper exercise of prosecutorial discretion. We conclude that the prosecutor properly exercised his discretion in charging these counts in the information.

The complaint, filed April 1, 1991, charged the defendant with two felonies (theft by fraud of Kathleen Brand's money and forgery of Renae Dohrer's check) and three misdemeanors (obstructing Sergeant Ratzburg, theft of checks belonging to Kathleen Brand, and theft of checks belonging to Renae Dohrer). The obstruction charge was dismissed on April 5, 1991. Following the April 10, 1991, preliminary hearing the state filed an information that charged the defendant with the following counts:

Count One—felony theft by fraud for defrauding Kathleen Brand of in excess of $2,500 in cash, in violation of sec. 943.20(1)(d) & (3)(c), Stats.

Count Two—forgery for falsely making a check for $22,000 that purported to have been made by Renae Dohrer, in violation of sec. 943.38(1)(a), Stats.

Count Three—felony theft by retention of a pistol belonging to Cristie Bolton, in violation of sec. 943.20(1)(a) and (3)(d)5., Stats.

Count Four—misdemeanor theft by retention of checks belonging to Cristie Bolton, in violation of sec. 943.20(1)(a), Stats.

708

Count Five—misdemeanor theft by retention of checks belonging to Kathleen Brand, in violation of sec. 943.20(1)(a), Stats.

Count Six—misdemeanor theft by retention of checks belonging to Renae Dohrer, in violation of sec. 943.20(1)(a), Stats.

Count Seven—misdemeanor obstructing an officer by giving the Kenosha Police Department a false name, in violation of sec. 946.41(1), Stats.

The defendant seeks dismissal of counts (3), (4), and (7) because he claims they were not mentioned in the complaint and not based upon or related to evidence presented at the preliminary hearing. The defendant argues that these additional charges were improper because they do not meet the test set forth in *State v. Burke,* 153 Wis. 2d 445, 451 N.W.2d 739 (1990).

In *Burke* we held that:

> a prosecutor may bring additional charges in the information so long as the charges are not wholly unrelated to the transactions or facts considered or testified to at the preliminary examination, irrespective of whether direct evidence concerning the charges had been produced at the preliminary examination. The charges must be "related in terms of parties involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent." *Bailey,* 65 Wis. 2d at 341.

*Burke,* 153 Wis. 2d at 457.[14] The *Burke / Richer* rule applies only to the charging of additional felonies in an

_____

[14] We recently examined the *Burke* rule in *State v. Richer,* 174 Wis. 2d 231, 496 N.W.2d 66 (1993), where we held:

that a felony not charged in the preliminary examination can be made a count in a subsequently filed information if there is evidence direct or inferential in respect to that felony adduced at the prelimi-

information, not the charging of additional misdemeanors. The defendant incorrectly relies on *Burke* with regard to counts 4 and 7 which charge misdemeanors. The defendant was not entitled to a preliminary hearing on the misdemeanor charges. A defendant only has the right to a preliminary hearing in cases where a felony is charged. The purpose of the preliminary hearing is to determine whether there is probable cause to believe a felony has been committed by the defendant. Section 970.03(1), Stats. The state is not allowed to present evidence of misdemeanors at a preliminary hearing because it is irrelevant to the determination before the court.

The defendant cannot be heard to complain that the charging of additional misdemeanors in the information deprives him of proper notice of the charges against him. In the case of misdemeanor charges, the information serves the same purpose as a complaint which is to inform the defendant of the charges against him. The defendant can make a pre-trial motion to dismiss the new misdemeanor charges by challenging the sufficiency of the information, just as the defendant can do when misdemeanors are charged in a complaint. Section 971.31(2), Stats.[15] Counts 4 and 7 in the information

nary or if the subsequently charged felony is demonstrated by the state to be transactionally related, i.e., "not wholly unrelated" to one or more of the felonies for which the defendant has been bound over for trial.

*Richer,* 174 Wis. 2d at 253–54.

[15] Section 971.31(2), Stats. provides:

**(2)** Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived.

alleging additional misdemeanors were proper charges and the information was sufficient to support those charges.

As to count 3 in the information alleging an additional felony for theft of a pistol belonging to Cristie Bolton, the *Burke / Richer* rule applies and was satisfied in this case. This additional charge was not wholly unrelated to the transactions or facts considered or testified to at the preliminary hearing. The circuit court judge correctly stated, "there is sufficient, although barely, sufficient testimony in the record that under *Burke* the charge could be issued."

There was testimony at the preliminary hearing regarding the items which were seized from the defendant's motel room. One of the officers who conducted the search testified that a firearm was seized. The prosecutor told the judge that the firearm would be the subject of an additional charge in the information. Count 3 was properly charged in the information.

We conclude that counts 3, 4, and 7 were properly charged in the information and the circuit court properly denied the defendant's motion to dismiss these counts.

*By the Court.*—Order affirmed, and the cause is remanded to the circuit court for further proceedings.

SHIRLEY S. ABRAHAMSON, J., *(concurring in part and dissenting in part).* The majority holds that Koch's constitutional rights were violated when the state held him in jail for approximately 92 hours without a probable cause determination. I agree. Yet the majority opinion does not provide Koch with any recourse for the violation of his constitutional rights. The result is to "grant the right but in reality to withhold its privilege and enjoyment." *Mapp v. Ohio,* 367 U.S. 643, 656 (1961).

. The Wisconsin Constitution recognizes that rights are meaningless when unaccompanied by remedies for their enforcement. Article I, sec. 9, of the Wisconsin Constitution provides that there shall be a certain remedy for all wrongs to the person.[1] *In Interest of E.C.,* 130 Wis. 2d 376, 389, 387 N.W.2d 72 (1986).

I am not necessarily urging the suppression of all evidence acquired during the time Koch was held, as he advocates.[2] Nonetheless, I believe that this court has a duty to craft a remedy to redress the violation of a person's constitutional rights and to deter the state from violating the rights of persons arrested in the future. If no remedy is provided a constitutional right becomes an empty promise.

---

[1] Every person is entitled to a certain remedy in the law for all injuries, or wrongs which he may receive in his person, property or character . . .. conformably to the laws.

Similar provisions appear in the constitutions of 39 states. David Schuman, *The Right to a Remedy,* 69 Temple L. Rev. 1197, 1220 (1992).

[2] For discussions of suppression of evidence for violation of *Gerstein-Riverside, see* 2 LaFave, Search and Seizure sec. 5.1(f), p. 425 (2d ed. 1987), 1993 Supp. p. 106; Thomas, *The Poisoned Fruit of Pretrial Detention,* 61 N.Y.U. L. Rev. 413, 461 (1986).