# COURT OF APPEALS
# DECISION
# DATED AND FILED

## January 18, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1438-CR**

Cir. Ct. No. **2019CT730**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KELLY A. MONSON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Winnebago County: JOHN A. JORGENSEN, Judge. *Affirmed*.

¶1 LAZAR, J.[1] Kelly A. Monson appeals from a judgment of conviction on one count of operating a vehicle with a restricted controlled

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

substance (RCS) in her blood (third offense) contrary to WIS. STAT. § 346.63(1)(am) and one count of operating a vehicle under the influence of an RCS contrary to § 346.63(1)(a). She contends that law enforcement lacked reasonable suspicion to extend a traffic stop to conduct standardized field sobriety tests. This court concludes that, given the totality of the circumstances, there were articulable facts giving rise to reasonable suspicion of impaired driving sufficient to extend the traffic stop into an OWI/RCS investigation. The judgment of conviction is affirmed.

## BACKGROUND

¶2    In April 2019, Officer Jessica Kramer[2] was on patrol when she observed a car stopped in traffic. Kramer noticed that the driver of this car, Monson, was apparently struggling with an interlock ignition device (IID). Kramer called out a traffic stop[3] to her dispatcher and approached Monson, asking her questions about the vehicle and requesting insurance information. Monson said that she was having trouble with her IID, which was giving her error readings she had never seen before. Perhaps because she was searching for her insurance information, Monson did not make eye contact with Kramer during this initial interaction. Monson was unable to provide proof of insurance, and her vehicle registration was expired, so Kramer issued citations for these violations. When Kramer returned to Monson's vehicle to explain the citations, she noticed that Monson had bloodshot, glassy eyes and what appeared to be dry mouth. She also

---

[2] At the time of the stop, the officer's name was Jessica Trochinski. When the officer testified at trial, her name was Jessica Kramer, the name used in this opinion.

[3] This court notes the irony in calling this a traffic "stop" when it was Monson herself who stopped her vehicle.

noted that Monson was nervous (by Monson's own admission she was having an anxiety attack), that her speech was "somewhat exaggerated and slurred," and that her eyes were "all over the place." Kramer further observed that Monson "kept clenching her teeth and smiling," and Kramer knew from her training and experience that "the clenched, exaggerated movement has been significant with those from testing for methamphetamines."

¶3 These observations prompted Kramer to ask Monson whether she had been using drugs and to ask Monson to do field sobriety tests. Based on Monson's inadequate performance, Kramer placed her under arrest. A subsequent blood test executed pursuant to a search warrant showed the presence of THC and methamphetamines in Monson's blood.

¶4 Monson's attorney filed a motion to suppress this physical evidence in the trial court, arguing that Kramer lacked reasonable suspicion to extend the stop and perform the field sobriety tests. After hearing testimony from Kramer and watching video footage of the stop that had been recorded on Kramer's body camera, the trial court denied the motion, citing "the eyes all over the place, the slurred speech, [and Monson] acting nervous" as articulable reasons that Kramer suspected impaired driving and finding that these were sufficient to justify extension of the stop. The court noted that it found Kramer to be a credible witness and that her testimony was supported by the video evidence. It also pointed out that Kramer had life experience through her nineteen years on the job that informed her of behaviors that could indicate a person being under the influence of drugs.

¶5 At trial on November 9, 2021, a jury convicted Monson on one count of operating a motor vehicle while under the influence of a controlled

substance and one count of operating a motor vehicle with an RCS in her blood. Monson appeals her conviction.

## DISCUSSION

¶6      Monson contends that her constitutional rights were violated when the officer unlawfully extended the traffic stop by having her exit the vehicle and perform standardized field sobriety tests.  She relies upon *State v. Hogan*, 2015 WI 76, 364 Wis. 2d 167, 868 N.W.2d 124, that she contends has similar facts, for support in showing that Officer Kramer did not have an articulable, reasonable basis for asking Monson to step out of her vehicle.  The State argues that *Hogan* is clearly distinguishable and asserts that the judgment should be upheld.  This court agrees.

### I.      Standard of Review

¶7      The issue on appeal centers upon constitutional rights, and, as such, it is subject to a two-step process of review.  *See State v. Dalton*, 2018 WI 85, ¶33, 383 Wis. 2d 147, 914 N.W.2d 120; *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120.  First, this court will uphold a trial court's findings of fact unless they are clearly erroneous.  *State v. Hughes*, 2000 WI 24, ¶15, 233 Wis. 2d 280, 607 N.W.2d 621 (citing *State v. Secrist*, 224 Wis. 2d 201, 207, 589 N.W.2d 387 (1999)).  Second, this court applies the law to those facts de novo. *See Dalton*, 383 Wis. 2d 147, ¶33.  This process requires courts to "analyze issues of constitutional fact" by "on one hand giving deference to the [trial] court's findings of evidentiary fact, and on the other reviewing independently the [trial] court's application of those facts to constitutional standards."  *State v. Malone*, 2004 WI 108, ¶14, 274 Wis. 2d 540, 683 N.W.2d 1.

## II. Reasonable suspicion to extend the stop existed.

¶8 People are protected against unreasonable searches and seizures under the auspices of both the Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution. "The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Davis v. United States*, 564 U.S. 229, 236 (2011) (quoting U.S. CONST. amend. IV). The key phrase is that the people are protected against "unreasonable" searches and seizures. *See State v. Parisi*, 2016 WI 10, ¶28, 367 Wis. 2d 1, 875 N.W.2d 619.

¶9 Both of these constitutional "provisions' purpose is to safeguard individuals' privacy and security against arbitrary governmental invasions, which requires striking a balance between the intrusion on an individual's privacy and the government's promotion of its legitimate interests." *State v. Sykes*, 2005 WI 48, ¶13, 279 Wis. 2d 742, 695 N.W.2d 277. The Fourth Amendment is applicable to and binding upon the states. *State v. Koch*, 175 Wis. 2d 684, 700, 499 N.W.2d 152 (1993). There is no dispute that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569.

¶10 In evaluating whether probable cause exists in a traffic-stop scenario, the court must "look to the totality of the circumstances to determine whether the 'arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe ... that the defendant was operating a motor vehicle while under the influence of an intoxicant [or an RCS].'" *State v. Babbitt*,

188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994) (first alteration in original) (quoting *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986)). This "is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience." *State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394; *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996).

¶11 "Reasonable suspicion is 'a low bar[.]'" *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (alteration in original; citation omitted). It requires less certainty than probable cause. *State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. But, it "must be based on more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). To be reasonable, not only must a traffic offense stop (like other Fourth Amendment seizures) be justified at its inception, but subsequent police conduct must also be reasonable under the circumstances. *See State v. Arias*, 2008 WI 84, ¶32, 311 Wis. 2d 358, 752 N.W.2d 748.

¶12 Reasonable suspicion is defined as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. This court has explained that:

> If, during a valid traffic stop, the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place, the stop may be extended and a new investigation begun. The validity of the extension is tested in the same manner, and under the same criteria, as the initial stop.

6

*State v. Adell*, 2021 WI App 72, ¶16, 399 Wis. 2d 399, 966 N.W.2d 115 (quoting *State v. Betow*, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999)); *see also State v. Smith*, 2018 WI 2, ¶28, 379 Wis. 2d 86, 905 N.W.2d 353 ("Discovering additional reasonable suspicion during the ordinary inquiries can lead to a legal basis upon which to extend the stop beyond the ordinary inquiries.").

¶13 The court in *Waldner*, 206 Wis. 2d at 58, concisely set out how courts are to consider multiple facts and how the accumulation of those facts can build to a finding of reasonable suspicion:

> Any one of these facts, standing alone, might well be insufficient. But that is not the test we apply. We look to the totality of the facts taken together. The building blocks of fact accumulate. And as they accumulate, reasonable inferences about the cumulative effect can be drawn. In essence, a point is reached where the sum of the whole is greater than the sum of its individual parts. That is what we have here. These facts gave rise to a reasonable suspicion that something unlawful might well be afoot.

¶14 As the State succinctly states, the only contested issue on appeal "is whether Officer Kramer had reasonable articulable suspicion to ask Ms. Monson to perform field sobriety tests." In this case, Kramer noted the following on her first interaction at Monson's vehicle: Monson refused to make eye contact with her when Monson was looking for her insurance and vehicle information, and Monson appeared rather nervous (claiming she was having an anxiety attack). On the second trip to Monson's vehicle, when Monson actually turned to face the officer, Kramer noticed that Monson's eyes were bloodshot, glassy, and "all over the place," that her speech was slurred and exaggerated, and that her teeth were clenched, all of which Kramer recognized as signs of methamphetamine use. Taken together, these form significant building blocks of facts leading Kramer to have reasonable suspicion that Monson was driving while impaired.

7

¶15    Also, even though the trial court did not allow the question about precisely why Kramer first stopped her police car to be presented to the jury pursuant to a motion in limine, the answer to that question is relevant in this appeal:  Monson had stopped her vehicle in traffic about one full vehicle length back from a stop sign.  This is out of the ordinary and would indicate to a reasonable police officer that something was amiss.  Kramer then noticed that the driver of the vehicle (Monson) was "messing around with something in the car and from the distance where [Kramer] was at, eventually it looked like it was an IID." Kramer had first thought the item was a syringe.  Kramer initially stopped her own vehicle because of Monson's stopped vehicle, but after some observation, Kramer had more concerns:  Monson could have been in trouble physically, could have been attempting to inject something, or could have had mechanical issues with her vehicle.  Once Kramer heard that Monson was having trouble starting the vehicle with her IID—a device she knew was only placed in vehicles where the owner had already been convicted of an OWI—it was logical that Kramer's interest was piqued.  Monson claimed that she was having trouble with the IID and was getting an error reading; that was something she claimed had never happened before. Kramer did not have to accept that explanation, even if the vehicle eventually did start up, because police officers do not have to just accept what they are told and stop investigations based solely on statements by possible law violators.  *See id.* at 61 ("Although many innocent explanations could be hypothesized as the reason for [a defendant's] actions, a reasonable police officer charged with enforcing the law cannot ignore the reasonable inference that they might also stem from unlawful behavior.").

¶16    While there are a myriad of Wisconsin (and nation-wide) opinions that allow for police officers to stop vehicles for equipment, burnt-out lights, or

other technical vehicle malfunctions even without any other observations of suspicious conduct, courts have declined to formulate a bright-line rule by which to judge the reasonableness of a traffic stop. *Malone*, 274 Wis. 2d 540, ¶34. But, "[a] law enforcement officer is justified in detaining an individual if he has suspicion 'grounded in specific, articulable facts and reasonable inferences from those facts, that the individual has committed a crime.'" *Id.*, ¶35 (citation omitted). The same applies if the officer reasonably believes that a crime was about to be committed. *Adell*, 399 Wis. 2d 399, ¶16.

¶17 "Even if no probable cause existed, a police officer may still conduct a traffic stop when, under the totality of the circumstances, he or she has grounds to reasonably suspect that a crime or traffic violation has been or will be committed." *Popke*, 317 Wis. 2d 118, ¶23. Here, once Kramer noticed that Monson was blowing into an IID in a vehicle that had stopped in traffic, she had notice that Monson was under an order after an OWI conviction and that Monson's breath was not being accepted by the IID to start the ignition. Kramer could reasonably believe that Monson may have imbibed something that prevented her from starting up the vehicle and that Monson would drive while impaired if she were finally able to start the ignition. Or Kramer could have reasonably believed that Monson had ingested an illegal substance—a crime in and of itself— that caused her exaggerated conduct, clenched teeth, and glassy and bloodshot eyes and that would have impaired Monson's driving once she got the vehicle restarted. Either way, there were enough facts to support reasonable suspicion that Monson had committed or was about to commit the offense of driving while impaired.

¶18 Monson places her reliance upon *Hogan*, which she claims has facts that are "strikingly similar" to her case, in which our supreme court concluded that

9

a police officer did not have reasonable suspicion to extend a traffic stop. There are, however, stark differences between *Hogan* and Monson's case. First is the presence of an IID. Next are the building blocks creating reasonable suspicion (the glassy and bloodshot eyes, the anxiety, the slurred speech, and the clenched teeth and exaggerated conduct that indicate drug use) that Kramer observed in Monson. But even more important is the fact that, while supportive building-block facts may have been factually present in *Hogan*, they were not *before* that trial court. Our state supreme court in *Hogan* identified several facts, but then explained that the State had not presented them sufficiently for its consideration:

> Upon careful examination of the record, we believe the State could have made a valid case that Deputy Smith had reasonable suspicion to pursue field sobriety tests with Patrick Hogan. However, the case the State could have made in circuit court was not made, and, consequently, Judge Day's ruling on this point was not error.

*Hogan*, 364 Wis. 2d 167, ¶43.

¶19 That being the case, Monson's reliance on *Hogan* is patently inappropriate. This court looks to what case was made in the trial court with respect to Monson. There was more than just the anxiety attack and Monson's nervousness: several additional building blocks constructed reasonable suspicion. A reasonable police officer could have added these facts all together in the same fashion as Kramer. The foundation for suspicion was the unusual location of the stopped vehicle in traffic and the presence of an IID device that was not letting Monson start her ignition. If, as Monson asserts, there was just the anxiety of being questioned by a police officer, that might not have led to a reasonable suspicion that something criminal was afoot. But Kramer observed much more than that, and the trial court, looking to the totality of the circumstances, was not

in error to find that the facts all lead to reasonable suspicion to extend the traffic stop and have Monson step out of her vehicle to perform field sobriety tests.

¶20    "In a long line of cases, [the United States Supreme Court has] said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt.  The arrest is constitutionally reasonable."  *Virginia v. Moore*, 553 U.S. 164, 171 (2008).  The trial court's findings of fact were not only not clearly erroneous, they were not erroneous at all.  Therefore, in Monson's case, articulable facts warranted reasonable suspicion to extend the traffic stop, which led to Monson's subsequent lawful arrest.  *See State v. Anagnos*, 2012 WI 64, ¶56, 341 Wis. 2d 576, 815 N.W.2d 675; *Post*, 301 Wis. 2d 1, ¶13.

## CONCLUSION

¶21    In summary, this court concludes that the trial court's findings of fact were not clearly erroneous and that, given the totality of the circumstances, there was reasonable suspicion to extend the traffic stop into an OWI/RCS investigation.  Accordingly, the judgment is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.