COURT OF APPEALS
DECISION
DATED AND FILED

October 3, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1098-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2020CM57**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SHANNON MARIE SIMPLOT,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Trempealeau County: RIAN RADTKE, Judge. *Affirmed*.

¶1 GILL J.[1] Shannon Marie Simplot appeals a judgment convicting her of misdemeanor operating a motor vehicle with a controlled substance in her blood, as a third offense. Simplot argues that: (1) police lacked reasonable

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

suspicion to seize her in order to investigate whether she was under the influence of an intoxicant; and (2) she was de facto arrested without probable cause when the police took her to the police station. We reject Simplot's arguments and affirm the judgment.

## BACKGROUND

¶2 The facts found by the circuit court at the suppression hearing are not disputed. Simplot went to the police department in Arcadia to drop off a cell phone that someone left in her car. Officer Nicholas Smith observed that Simplot appeared distressed, was hard to understand, was moving around frantically, and had a rapid rate of speech. He also noted that she had scabs on her face and forearms, which he knew to be indicative of methamphetamine use. Simplot said that she wanted to drop off the phone at the police station because she was concerned that someone was going to claim that she stole it. Smith observed that Simplot's demeanor was not appropriate for the circumstances and that she exhibited paranoia.

¶3 Smith and Officer James Waniorek accompanied Simplot to her car so that Simplot could get her identification. Simplot's companion became upset, started swearing and stated, "[l]et's get out of here." Simplot got in the car and started driving away. The police decided to follow her and pulled over her car several blocks from the police station. Smith testified that there was a large crack on Simplot's front windshield, which is a safety issue, and that he was concerned that Simplot could be impaired or unable to safely drive based on her behavior at the station.

¶4      After the officers stopped Simplot's car, they called a K-9 police unit to meet them at the traffic stop.[2]   After its arrival, the K-9 alerted to the presence of drugs, although no drugs were found during a search of the vehicle. The officers conducted field sobriety tests, with some of the results suggesting that Simplot was impaired.  The officers then took Simplot back to the police station so that she could meet with a drug recognition expert, Officer Mark Spaeth.  Spaeth testified that drug recognition evaluations cannot be conducted on the roadside because they need to be done in a controlled environment.

¶5      Spaeth advised Simplot of her *Miranda*[3] rights, and Simplot agreed to talk with Spaeth.   After Spaeth conducted his interview, he concluded that Simplot was under the influence of a stimulant.  Simplot then submitted to a blood test, which showed that she had methamphetamine in her blood.

¶6      Simplot was charged with bail jumping, operating a motor vehicle under the influence of an intoxicant (as a third offense), and operating with a restricted controlled substance in her blood (as a third offense), all misdemeanors. She moved to suppress the results of the blood test obtained by the police.  After a hearing, the circuit court denied the motion to suppress.

¶7      Pursuant to a plea agreement, Simplot pled guilty to operating a motor vehicle with a restricted controlled substance in her blood, as a third offense.  The bail jumping charge was dismissed and read in for sentencing, and the other charge was dismissed outright.  Based on the parties' joint sentencing

---

[2] We note that Simplot makes no challenge to the constitutionality of the K-9 search. Thus, we need not address the existence of this fact as a potential issue.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

recommendation, the circuit court placed Simplot on probation for two years and imposed a jail sentence of sixty-five days as a condition of probation with all but fourteen of those days being stayed. The court also revoked Simplot's operating license for two years and ordered an ignition interlock device be placed on her vehicle for two years.

## DISCUSSION

¶8 On appeal, Simplot concedes that the police lawfully stopped her vehicle based on an equipment violation—specifically, the vehicle's cracked windshield. She argues, however, that the officers lacked reasonable suspicion to stop her vehicle in order to determine whether she was operating her vehicle under the influence of an intoxicant.

¶9 It is well established that police officers have authority to conduct an investigatory stop of a motor vehicle "without violating the Fourth Amendment's ban on unreasonable searches and seizures" if the officers have reasonable suspicion that unlawful behavior has occurred or is occurring within the vehicle. *Arizona v. Johnson*, 555 U.S. 323, 326 (2009); *see* *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). "To execute a valid investigatory stop consistent with the Fourth Amendment, a law enforcement officer must reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place." *State v. Young*, 212 Wis. 2d 417, 423, 569 N.W.2d 84 (Ct. App. 1997).

¶10 "The question of what constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience." *Id.* at 424. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably

4

warrant" the intrusion of the stop. ***State v. Post***, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (citation omitted). "In reviewing a denial of a motion to suppress, we will uphold the circuit court's findings of fact unless they are clearly erroneous. Whether those facts satisfy the constitutional requirement of reasonableness is a question of law, which we review de novo." ***Young***, 212 Wis. 2d at 424.

¶11 We first note that Simplot's operation of the vehicle with a cracked windshield provided the officers with sufficient reasonable suspicion to perform the traffic stop. However, even if Simplot's windshield was not cracked, the officers still had sufficient reasonable suspicion to conduct a traffic stop on the basis that Simplot was driving while impaired.

¶12 The investigating police officers made numerous tangible observations that gave rise to a reasonable suspicion that Simplot was impaired. Prior to the traffic stop, Smith observed that Simplot was moving her body around in a frantic manner and her speech was rapid, which he knew to be suggestive of stimulant impairment. Smith also observed that Simplot had scabs on her skin, which is indicative of methamphetamine use. Smith noted that Simplot's level of distress was not commensurate with the situation—namely, she seemed paranoid that she would be accused of stealing the phone that she was attempting to drop off with the police. This court concludes that all of these observations gave rise to a reasonable, articulable suspicion that Simplot was driving while impaired, which justified the intrusion of the investigative stop.

¶13 Simplot next argues that the police essentially placed her under arrest when transporting her from the location where they stopped her vehicle to the police station to meet with Spaeth, a drug recognition expert. She contends

this constituted an improper de facto arrest because it was made without probable cause.

¶14    "Probable cause to arrest is a requirement of the Fourth Amendment of the United States Constitution, binding upon the individual states through the Fourteenth Amendment." *State v. Koch*, 175 Wis. 2d 684, 700, 499 N.W.2d 152 (1993). "Probable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that the defendant probably committed a crime." *Id.* at 701. For the purpose of our decision, we assume without deciding that Simplot was under arrest at the time the officers transported her to the police station. The question is whether they had probable cause to arrest Simplot at that time.

¶15    After the officers stopped Simplot—which was based on their interactions with her at the police station and her vehicle's cracked windshield— they gathered additional information that supported their concerns that Simplot was driving under the influence of an intoxicant. The K-9 on the scene alerted to the presence of drugs in Simplot's car, although none were ultimately found in the vehicle. Simplot's field sobriety tests suggested that she was impaired. In addition, Simplot admitted to using marijuana several days before, which she said may have affected her ability to perform the field sobriety tests.

¶16    Based on the totality of the circumstances within the officers' knowledge—including their earlier observations of Simplot at the police station, their observations and interactions with Simplot during the traffic stop, and the alert of the K-9—we conclude that they had probable cause to arrest Simplot at the time they moved her to the station for a drug evaluation by Spaeth. Therefore,

even if we assume without deciding that the police transfer of Simplot constituted a de facto arrest, they did not violate her Fourth Amendment rights in so doing.[4]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] As noted above, Simplot was read her *Miranda* rights after she arrived at the police station but before Officer Spaeth interviewed her.